IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALI ENSTROM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-30 |
| | ) | |
| RIVIERA UTILITIES, | ) | |
| | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

---

## COMPLAINT

---

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §2000e et seq., and the Family Medical Leave Act, and Plaintiff asserts pendant state law claims for invasion of privacy, and negligent and wanton hiring, training, supervision and retention. This case is filed to correct unlawful employment practices and to provide appropriate relief to Ali Enstrom.  Ms. Enstrom was adversely affected by the unlawful practices of Riviera because of her gender and medical status, and she was terminated in retaliation for opposing such conduct as made unlawful under Title VII and the FMLA, and she has suffered damages.

### JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5(f)(1) ("Title VII"), and the Family Medical Leave Act.  This Court has supplemental jurisdiction over Ms. Enstrom's state law claims pursuant to 28 U.S. Code § 1367 in that they are so related to

claims in the action that they form part of the same case or controversy.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the Southern Division of the United States District Court for the Southern District of Alabama.

## PARTIES

3.  Plaintiff, Ali Enstrom, (hereinafter referred to as "Plaintiff" or "Ms. Enstrom") is an adult female citizen of the United States, and a resident of the State of Alabama.  Plaintiff is a former employee of the Defendant.

4.  At all relevant times, Defendant Riviera Utilities (hereinafter referred to as "Defendant" or "Riviera") has continuously been an Alabama corporation doing business in Alabama, and has continuously had over fifteen (15) employees.

5.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 7-1(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.  On December 12, 2018, Ali Enstrom ("Enstrom") filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII, violations under the Family Medical Leave Act and retaliation against the Defendant.  (Exhibit 1, Charge of Discrimination)

7.  On October 21, 2019, the United States Department of Justice, Civil Rights Division, issued a "Notice of right to Sue Within 90 Days" which stated, "If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of receipt of this Notice".  (Exhibit 2, Notice of Right to Sue)

8.  All conditions precedent to the filing of this lawsuit have been fulfilled.

## **STATEMENT OF FACTS**

9.  Ms. Enstrom graduated from Arizona State University with a degree in Mechanical Engineering in 2006 and had eight years of experience when she became employed with Riviera Utilities ("Riviera") on April 14, 2014.

10. Ms. Enstrom was the only female Engineer at Riviera.

11. Ms. Enstrom's supervisor, when she first became employed with Riviera, was James Wallace, who was at the time the Chief Engineer.

12. Mr. Wallace was promoted and became the Operations Manager.

13. While working with Mr. Wallace, Ms. Enstrom received positive evaluations that highlighted the quality of her work.

14. This positive working atmosphere changed when she began working under Scott Sligh, Chief Engineer.

15. Mr. Sligh treated Ms. Enstrom in a demeaning fashion, he criticized her decisions without cause, and this finally led to a bad review from Mr. Sligh.

16. In April of 2017, Ms. Enstrom received a bad review from Mr. Sligh and she asserts that it was because of her sex, female.

17. Ms. Enstrom immediately complained to Ms. Sharon Cureton, the Human Resources Director at Riviera, that Mr. Sligh treated the male engineers more favorably than he treated her.

18. In April of 2017, Ms. Enstrom discussed the sex discrimination against her with Ms. Cureton, as is required by the Policy Handbook of Riviera.

19. Ms. Enstrom discussed the hostile work environment and the sex discrimination against her

with Ms. Cureton many times in an attempt to remedy the sexually hostile environment and sex discrimination against her.

20. Ms. Enstrom made the complaints through proper channels as required by Riviera policy.

21. In response to Ms. Enstrom's claims of discrimination, Ms. Cureton told Ms. Enstrom that she needed to change to learn how to better accommodate Mr. Sligh's personality.

22. Based on this improper response to her complaint, Ms. Enstrom knew that any further complaint to anyone at Riviera would be a futile waste of her time.

23. Nevertheless, after this conversation with Ms. Cureton, Ms. Enstrom complained to Mr. Sligh's supervisor, Mr. Wallace, who had been promoted to Operations Manager.

24. Ms. Enstrom was told by Mr. Wallace that he supported Mr. Sligh, because Mr. Sligh was a supervisor.

25. From May 2017, through November of 2017, Ms. Cureton asked Ms. Enstrom how things with Mr. Sligh were going.

26. Ms. Enstrom repeatedly complained of discrimination to Ms. Cureton during this time.

27. In September of 2017, Ms. Enstrom requested that she be allowed to go to Florida after Hurricane Irma to help Riviera help the victims of Hurricane Irma.

28. Ms. Enstrom asked Mr. Wes Abrams if she could be on the Riviera team to go to Florida.

29. Mr. Abrams informed her, that because she was a girl, she could not go to Florida with the men.

30. Ms. Enstrom discussed this discrimination with Ms. Cureton and Mr. Wallace and no action was taken to punish Mr. Abrams for this act of discrimination and Ms. Enstrom was not

allowed to go on this work assignment and lost income.

31. Again, Ms. Enstrom discussed the discrimination with "someone" "in higher authority" and nothing was done.

32. In or about December of 2017, Ms. Enstrom was sexually harassed by Adam Taylor, a Customer Service Supervisor.

33. Mr. Taylor made lewd comments about her breasts and one day when she was sitting on the floor attaching wires to a computer, Mr. Taylor came up to her and thrust his pelvis in her face and remarked, "while you're down there".

34. At the annual Christmas party, Mr. Taylor asked Ms. Enstrom if she would like to "fuck" him in the parking lot.

35. Mr. Taylor sexually harassed another employee and Riviera investigated that employee's claims.

36. Ms. Enstrom was called into the investigation by Ms. Cureton and Ms. Cureton pressed Ms. Enstrom to make a statement.

37. Ms. Enstrom was reluctant to make a statement because she was concerned that she would be retaliated against for complaining about discrimination, and believed that even if she made a statement, her complaints would be ignored.

38. Even so, Ms. Enstrom told Ms. Curenton about the statements that Mr. Taylor had made and the statement that Mr. Abram's had made and about her not being allowed to go to Florida because she is female.

39. Mr. Taylor was transferred to another department. No other action was taken to Ms. Enstrom's knowledge.

40. Ms. Enstrom's complaints were not addressed.

41. Ms. Enstrom discussed her concerns of sexual harassment with Ms. Cureton and she followed proper procedures in accordance with Riviera policy.

42. Immediately after Ms. Enstrom complained of discrimination she was placed on probation.

43. Ms. Enstrom's concerns that she would be retaliated against were realized.

44. Mr. Sligh and Ms. Enstrom discussed in detail her belief that Mr. Sligh was treating her differently than he was treating the male engineers.

45. Ms. Enstrom complained that the male Engineers had offices and she did not. The available offices were given to males, even though the male was a junior engineer or hired in at a lower job level, than Ms. Enstrom.

46. Ms. Enstrom was given a truck, like the males, but it was taken away from her.

47. Ms. Enstrom was forced to wear men's clothing and was disciplined for not wearing clothes that were designed and fitted for men.

48. Ms. Enstrom complained that Mr. Sligh ran his fingers through her hair and told her that she was getting gray.

49. The color of her hair became a running joke with her supervisors.

50. Mr. Sligh sent Ms. Enstrom a picture of him in bed, with his shirt off.

51. Ms. Enstrom suffered incredible stress and went to the emergency room twice to be treated for anxiety.

52. From June through July of 2018, Ms. Enstrom took medical leave.

53. On June 7, 2018, Ms. Enstrom went out on FLMA leave for surgery and was intended to be back at work on June 28, 2018, but due to medical complications and surgery induced illness she was actually not released to be back at work until July 30, 2018.

54. Ms. Enstrom was released on light duty until August 17, 2018, but that was later extended to September 3, 2018.

55. The original release document from her physician stated that, "She is not to work in the heat no heavy lifting or strenuous activity for three weeks".

56. Rather than send Ms. Enstrom back to her office 4 miles from her home, she was reassigned to the Foley office, a great distance from her office, to work in a different department (operations center) as Riviera said it was the only way to accommodate her restrictions.

57. Ms. Enstrom could have performed the necessary functions of the light duty work from the location here she had been because she can perform her design work from any computer.

58. Ms. Enstrom could not do site visits she did not have a company truck like the males.

59. Moving Ms. Enstrom to Foley was hard on her physically as she was still weak and it lengthened her day and drive and created a hardship for her to get to her doctor in Mobile for follow up appointments and also when she got ill again on the job and had to leave to go be treated at the Mobile Infirmary.

60. Mr. Sligh told Ms. Enstrom that it was an inconvenience for him having her on light duty and that he did her a favor of letting her come back on light duty because he could have rejected her return.

61. While Ms. Enstrom was on light duty in the operations center Mr. Sligh ignored her in the hallways or whenever they ran into each other.

62. Mr. Sligh would come in the location where she was working and interact with all other individuals except Ms. Enstrom.

63. In addition, while on light duty, Mr. Sligh wanted for Ms. Enstrom to take a competency test that no other engineer had ever had to take and no other engineers were asked to take.

64. The last business day before Ms. Enstrom was due to return to full duty she was informed that she would be permanently relocated to the Foley office so that she could be under Mr. Sligh's direct supervision and was going to be assigned to technician work rather than performing duties of an Engineer working on projects an engineer would fulfill.

65. Ms. Enstrom was told to show up to the Daphne location Tuesday (Monday was a holiday) to clean out her office and then report to her new location in Foley.

66. While on light duty Sharon Cureton violated Ms. Enstrom's FLMA privacy rights by discussing information about her surgery with her supervisor Brad Pitt (Assistant General Manager) after he requested to know more about why Ms. Enstrom had been off work.

67. In August and September of 2018, the discrimination against Ms. Enstrom was pervasive and unrelenting.

68. Mr. Sligh's discrimination continued and finally on August 29, 2018, Ms. Enstrom went to Ms. Cureton in tears to complain about Mr. Sligh's treatment of her.

69. In addition to the discrimination, Ms. Enstrom complained that her FMLA rights were being violated.

70. Ms. Enstrom told Ms. Cureton that she was being subjected to a hostile environment based on her sex and that she was afraid.

71. Ms. Cureton responded that she could file a formal grievance or take a demotion and apply for a position in a different department.

72. This response re-emphasized to Ms. Enstrom that complaining was futile.

73. Ms. Enstrom discussed the discrimination against her with Mr. Wallace on August 31, 2018.

74. Ms. Enstrom told Mr. Wallace that there was a "double standard" and that she was facing "constant" discrimination.

75. Ms. Enstrom told Mr. Wallace that she felt like she was being treated "less than" and that she was working in a sexually hostile environment.

76. Ms. Enstrom stated that the "old timers" did not know how to work with women and Mr. Wallace told Ms. Enstrom that she was not a part of the Riviera "bloodline".

77. Mr. Wallace then stated that he had no issues with Ms. Enstrom's capabilities and hoped she would stay around.

78. Ms. Enstrom clearly discussed the discrimination with her supervisor, her supervisor's supervisor, and the Human Resources Department.

79. Ms. Enstrom outlined all of this discrimination in a letter to Riviera dated September 4, 2018. (See Exhibit 1; EEOC Charge, Exhibit 1, attached thereto)

80. Ms. Enstrom could no longer tolerate the hostile environment and retaliation and could not continue her employment.

81. On September 5, 2018, Riviera sent a letter to Ms. Enstrom stating that that they would investigate her claims. (See, Exhibit 1, EEOC Charge, Exhibit 2, attached thereto)

82. Ms. Enstrom heard nothing from Riviera and filed a claim for unemployment benefits.

83. On October 24, 2018, the Alabama Department of Labor held a hearing regarding Ms. Enstrom's claim for unemployment benefits.

84. In the "Decision on Unemployment Compensation Claim" issued on October 30, 2018, the

DOL found that Ms. Enstrom was entitled to benefits. (See Exhibit 1, EEOC Charge, Exhibit

5, attached thereto)

85. The Department of Labor's **FINDINGS** included the following:

> The claimant was employed with the above listed employer from April 14, 2014, until September 4, 2018, the only female engineer. On the final date, she submitted a written resignation letter to upper management. The final incident that led to the decision was a mandate issued to the claimant that she transfer to a work site location 30 miles away from the usual site. The change in work site would require the claimant to work directly with and have as a direct supervisor, a member of the management team she had reported to human resources multiple times for sexual harassment and improper behavior directed toward her. Human resources personnel advised the claimant, days prior to September 4, 2018, that she would be demoted with a reduction in pay if she did not comply with the request. The claimant is unaware of any disciplinary action or discussion with the reported person by human resources or upper management, but was advised the men employed did not know or understand how to work with a woman. She sought medical assistance for the review and stress related issues that resulted from the ongoing working environment. The claimant determined the conditions such that she could not continue and left the position.

86. The Department of Labor found that Ms. Enstrom had "good cause" to leave the employment

of Riviera and the DOL awarded Ms. Enstrom unemployment benefits.

87. The Department of Labor concluded:

> **CONCLUSIONS:** Section 25-4-78(2) of the Unemployment Compensation Law provides for disqualification if an individual has left her most recent bona fide employer voluntarily without good cause connected with such work. "Good cause" is defined as substantial reason adequate excuse or just ground for such action that will bear the test of reason when compared to what a normal or average worker would do under similar circumstances. The preponderance of presented evidence shows an intolerable situation existed from which the claimant could not have continued employment. The employer failed to provide an equitable working environment or properly address existing issues repeatedly reported by claimant. As she attempted to resolve the issues of concern with the employer on multiple occasions to no avail, voluntary separation for a good cause reason caused by or connected to the conditions of employment has been established. Therefore, it is determined the claimant is not subject to disqualification from the receipt of unemployment compensation benefits under this section of Law.

88. The State of Alabama concluded that Ms. Enstrom suffered from an intolerable situation and that even though she tried to resolve the situation on "multiple occasions" her attempts were of "no avail".

89. The Department of Labor's findings and conclusions are the same type of findings and conclusions that Ms. Enstrom's sent to Riviera in her letter of September 4, 2018. (See, Exhibit 1, EEOC Charge, Exhibits 1 and 5, attached thereto)

90. Ms. Enstrom provided Riviera with notice of her claims on numerous occasions and she tried to resolve the issues of concern with Riviera on multiple occasions to no avail.

91. Ms. Enstrom's letter of September 4, 2018, clearly sets forth her position that she had been discriminated against and retaliated against by Riviera.

92. The DOL Decision clearly supports Ms. Enstrom's position that she complained to Riviera about discrimination and her complaints were ignored and she was discriminated against and retaliated against.

93. On September 5, 2018, Riviera had sent a letter to Ms. Enstrom that they would investigate her claims. (See, Exhibit 1, EEOC Charge Exhibit 2, attached thereto)

94. From September 5, 2018 through December 3, 2018, Ms. Enstrom received no reply from Riviera.

95. Then, on December 3, 2018, three months after Ms. Enstrom left the employment of Riviera and provided Riviera with a detailed explanation of the discrimination against her, and a month after the DOL issued a Decision agreeing with Ms. Enstrom, Riviera send a letter to Ms. Enstrom letting Ms. Enstrom know that Riviera had completed their internal investigation. (See, Exhibit 1, EEOC Charge Exhibit 3, attached thereto)

96. Three months after her termination, and after Riviera lost the unemployment case, then,

Riviera let Ms. Enstrom know that they had investigated her complaints "according to their normal procedures".

97. Ms. Enstrom replied to Riviera's letter and asked Riviera for among other things, a copy of their findings. (See, Exhibit 1, EEOC Charge, Exhibit 4, attached thereto)

98. Riviera never responded to Ms. Enstrom's request, but Riviera did appeal the "Decision on Unemployment Compensation".

99. On March 7, 2019, the State of Alabama, Board of Appeals, Department of Labor held a Hearing, Case No. 07890AT18.

100. Riviera was represented by skilled and able legal counsel at the DOL Appeals Hearing.

101. Mr. Sligh, Ms. Cureton, and James Wallace all testified at this Hearing, Case No. 07890AT18.

102. The three-member panel questioned Mr. Sligh, Ms. Cureton and Mr. Wallace regarding the circumstances of Ms. Enstrom's departure from employment at Riviera.

103. Riviera's attorney questioned Mr. Sligh, Ms. Cureton and Mr. Wallace concerning the circumstances of Ms. Enstrom's departure from employment at Riviera.

104. Ms. Enstrom was thoroughly cross-examined by the DOL panel and Riviera's attorney.

105. After a thorough Hearing the DOL issued a Decision. (Exhibit 3; "Decision of Board of Appeals")

106. The Department of Labor's, Board of Appeals, FINDINGS were as follows:

FINDINGS: The Board of Appeals has carefully considered all the evidence in this case and after such consideration is of the opinion that the findings, conclusions and decisions of the Administrative Hearing Officer are correct.

107. The Board of Appeals found that the FINDINGS of the Administrative Hearing Officer were correct, that, among other things,

The change in work site would require the claimant to work directly with and have as a direct supervisor, a member of the management team she had reported to human resources multiple times for sexual harassment and improper behavior directed toward her. Human resources personnel advised the claimant, days prior to September 4, 2018, that she would be demoted with a reduction in pay if she did not comply with the request. The claimant is unaware of any disciplinary action or discussion with the reported person by human resources or upper management, but was advised the men employed did not know or understand how to work with a woman.

108. After the Board of Appeals "carefully considered all of the evidence in this case",

and the "conclusions and decisions of the Administrative Hearing Officer", the Board

of Appeals issued a DECISION and affirmed the Decision of the Administrative

Hearing Officer and held:

"DECISION: The decision of the Administrative Hearing Officer is affirmed".

109. The Board of appeals affirmed the Decision of the Administrative Hearing Officer.

110. The Board of Appeals stated that the conclusions of the Administrative Hearing

Officer were correct, and the Board of Appeals confirmed, that, among other things,

The preponderance of presented evidence shows an intolerable situation existed from which the claimant could not have continued employment. The employer failed to provide an equitable working environment or properly address existing issues repeatedly reported by claimant. As she attempted to resolve the issues of concern with the employer on multiple occasions to no avail, voluntary separation for a good cause reason caused by or connected to the conditions of employment has been established.

111. Riviera did not appeal this DECISION.

112. The DECISION of the Board of Appeals is final.

113. Ms. Enstrom complained on numerous occasions about the discrimination against her by

Riviera and the Department of Labor agreed with Ms. Enstrom that she had been

discriminated against which is why they granted Ms. Enstrom benefits.

114. In the Charge of Discrimination filed by Ms. Enstrom she stated the she was willing to conciliate.

115. Riviera did not enter into conciliation in this case.

116. Riviera released confidential, private, medical information to the EEOC without the consent of Ms. Enstrom.

117. A Right to Sue was issued on October 21, 2019.  (Exhibit 2)

118. All conditions precedent to the institution of this lawsuit have been fulfilled.

## COUNT ONE

## GENDER HARASSMENT IN VIOLATION OF TITLE VII

119. Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

120. Ms. Enstrom was harassed on the basis of her gender in violation of Title VII by Riviera.

121. As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

122. Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  Ms. Enstrom requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

14

## COUNT TWO

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

123.   Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

124.   Ms. Enstrom was discriminated against on the basis of her gender in violation of Title VII by Riviera.

125.   As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

126.   Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  The Plaintiff requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

### COUNT THREE

### RETALIATION IN VIOLATION OF TITLE VII

127.   Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

128.   Ms. Enstrom was retaliated against by the Defendant in violation of Title VII.

129.   As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

130.  Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  Ms. Enstrom requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## COUNT FOUR

## FAMILY MEDICAL LEAVE ACT

131.  Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

132.  Ms. Enstrom was discriminated against under the FMLA by Riviera.

133.  As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

134.  Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on their behalf in pursuit of these claims.  Ms. Enstrom requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## COUNT FIVE

## RETALIATION UNDER THE FAMILY MEDICAL LEAVE ACT

135.  Ms. Enstrom realleges and incorporates by reference all previous paragraphs and

allegations as set forth herein.

136.  Ms. Enstrom was retaliated against in violation of the FMLA by Riviera.

137.  As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

138.  Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Defendant for compensatory damages, liquidated/punitive damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  The Plaintiff requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## COUNT SIX

## INVASION OF PRIVACY

139.  Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

140.  This is a claim arising under the laws of the State of Alabama to redress violations by Riviera to Ms. Enstrom's right to privacy and the ratification of that conduct by Riviera.

141.  Riviera invaded Ms. Enstrom's privacy in violation of the law when Ms. Cureton published her medical condition to another employee and when Riviera released Ms. Enstrom's medical records to the Equal Employment Opportunity Commission.

142.  As an approximate result of Riviera's conduct, which was condoned by Riviera, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

143.   Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, statutory liquidated damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  Ms. Enstrom requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## COUNT SEVEN

## NEGLIGENT AND WANTON HIRING, TRAINING,

## SUPERVISION AND RETENTION

144.   Ms. Enstrom realleges and incorporates by reference all previous paragraphs and allegations as set forth herein.

145.   This is a claim arising under the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Riviera.

146.   Riviera has a duty to provide Ms. Enstrom with a reasonably safe work environment and to follow its own policies and procedures prohibiting gender harassment, gender discrimination, and retaliation under Title VII, and to protect her from FMLA violations and retaliation under the FMLA in the workplace.  Further, Riviera had a duty to follow the law.

147.   Riviera failed to establish an adequate policy against discrimination, harassment and retaliation, failed to implement such a policy consistently, failed to regularly and clearly communicate policy to its agents and employees, and failed to train and enforce its own policies to the detriment of Ms. Enstrom and other female employees.

148.   Riviera failed to educate and train managers, supervisors, and employees on harassment and discrimination and invasion of privacy.

149.  As an approximate result of Riviera's conduct, Ms. Enstrom was caused to suffer embarrassment, humiliation, loss of reputation, emotional distress, trauma, and mental anguish for which she claims damages.

150.  Ms. Enstrom seeks reinstatement and prays this Honorable Court enter a judgment against Riviera for compensatory damages, statutory/liquidated damages, prejudgment interest, equitable relief, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on her behalf in pursuit of these claims.  Ms. Enstrom requests all other relief that may be available to her as a matter of law and equity and all relief that this Court and/or a jury may award.

## VII.    PRAYER FOR RELIEF

Ms. Enstrom seeks reinstatement and prays that she be reinstated to her former position with all due back pay, and Plaintiff requests an order awarding damages in the amount of her respective unpaid compensation, including overtime and benefits and any other relief she may be entitled to in law or equity; Ms. Enstrom further prays that this Honorable Court enter a judgment against Riviera for compensatory damages, punitive damages, liquidated damages, prejudgment interest, equitable relief, including, but not limited to, any declaratory relief which may be appropriate, attorneys' fees, expert costs, and all costs and expenses of Court and litigation expended on his behalf in pursuit of these claims.  The Plaintiff requests all other relief that may be available to him as a matter of law and equity and all relief that this Court and/or a jury may award.

## JURY TRIAL DEMAND

Ms. Enstrom requests a trial by struck jury on all questions of fact raised by her complaint.

Respectfully submitted this the 17th day of January, 2020.

s/DANIEL A. HANNAN
(HANND4492)
DANIEL A. HANNAN, LLC
Attorney for Plaintiff

DANIEL A. HANNAN, LLC
P.O. Box 1286
Mobile, AL. 36633
Work:        251-289-1326
Cell:        251-654-1360
Fax:         251-252-1331
Email:       dahlawyer@hotmail.com
             hannanlaw@gmail.com

**DEFENDANT MAY BE SERVED BY CERTIFIED MAIL**
**AT THE FOLLOWING ADDRESS:**

Riviera Utilities
413 E. Laurel Avenue
Foley, Alabama 36535

# EXHIBIT 1

# CHARGE OF DISCRIMINATION WITH EXHIBITS

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Ali Enstrom | 602-909-5418 | 10.01.80 |

| Street Address | City, State and ZIP Code |
|---|---|
| 9820 Sommerset Drive | Daphne, Alabama 36526 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Riviera Utilities | 15+ | 251-943-5001 |

| Street Address | City, State and ZIP Code |
|---|---|
| 413 E. Laurel Avenue | Foley, Alabama 36536 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | 15+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)   **FMLA**

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest          Latest
January 2017

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached Declaration and Exhibits thereto

EEOC Mobile Local Office

DEC 1 2 2018

RECEIVED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 12-11-18     _Charging Party Signature_<br>Date | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

## DECLARATION OF ALI ENSTROM

My name is Ali Enstrom and I am over the age of nineteen (19) years and have personal knowledge of the facts contained in this declaration and swear upon penalty of perjury that the facts set forth in this Declaration are true and correct to the best of my knowledge.

1. I graduated from Arizona State University with a degree in Mechanical Engineering in  2006 and had eight years of experience when I became employed with Riviera Utilities ("Riviera") on April 14, 2014.

2. I was the only female Engineer at Riviera.

3. My supervisor when I first became employed with  Riviera was James Wallace. While working with Mr. Wallace, I received positive evaluations  that highlighted the quality of my work.

4. This positive working atmosphere changed when I began working under Scott Sligh.

5. Mr. Sligh treated me in a demeaning fashion, he criticized my decisions without cause and this finally led  to a bad review from Mr. Sligh.

6. In April of 2017, I received a bad review from Mr. Sligh and believe it was because of my sex, female.

7. I immediately complained to Ms. Sharon Cureton, the  Human Resources director at Riviera, that Mr. Sligh treated the male engineers more favorably than he treated me.

8. In April of 2017, I discussed the sex discrimination against me with Ms. Cureton,  as is required by the Policy Handbook.

9. I discussed the hostile environment and the sex discrimination against me with Ms.  Cureton  many times  in an attempt to remedy the sexually hostile environment and sex discrimination against me.

10. I made the complaints through proper  channels as required by Riviera policy.

11. In response to my claims of discrimination, Ms. Cureton told me that I  needed to change to learn how to better accommodate Mr. Sligh's personality.

12. Based on this improper  response to my complaint, I knew that any further complaint to any one at

1

Riviera would be a futile waste of my time.

13. Nevertheless, after this conversation with Ms. Cureton, I complained to my supervisor Mr. Wallace and was told by Mr. Wallace that he supported Mr. Sligh because Mr. Sligh was a manager.

14. From May 2017, through November of 2017, Ms. Cureton asked me how things with Mr. Sligh were going.

15. I repeatedly complained of discrimination to Ms. Cureton during this time.

16. In September of 2017, I requested that I be allowed to go to Florida after Hurricane Irma to help Riviera help the victims of Hurricane Irma.

17. I asked Mr. Wes Abrams if I could be on the Riviera team to go to Florida.

18. Mr. Abrams informed me that because I was a girl, I could not go to Florida with them.

19. I discussed this discrimination with Ms. Cureton and Mr. Wallace and no action was taken to punish Mr. Abrams for this act of discrimination.

20. Again, I discussed the discrimination with "someone" "in higher authority" and nothing was done.

21. In or about December of 2017, I was sexually harassed by Adam Taylor, a Customer Service Supervisor.

22. Mr. Taylor made lewd comments about my breasts and one day when I was sitting on the floor attaching wires to a computer, Mr. Taylor came up to me and thrust his pelvis in my face and remarked, "while you're down there".

23. At the annual Christmas party, Mr. Taylor asked me if I would like to "fuck" him.

24. Mr. Taylor sexually harassed another employee and Riviera investigated that employee's claims.

25. I was called into the investigation by Ms. Cureton and Ms. Cureton pressed me to make a statement.

26. I was reluctant to make a statement because I was concerned that I would be retaliated against for complaining about discrimination, and believed that even if I made a statement, my complaints would be ignored.

27. Even so, I told Ms. Curenton about the statements that Mr. Taylor had made and the statement that Mr. Abram's had made and about me not being allowed to go to Florida because I am female.

28. Mr. Taylor was transferred to another department. No other action was taken.

29. My complaints were not addressed.

30. To be sure, I did discuss my concerns of sexual harassment with Ms. Cureton and I did follow proper procedures in accordance with Riviera policy.

31. Immediately after I complained of discrimination I was placed on probation.

32. My concerns that I would be retaliated against were realized.

33. Mr. Sligh and I discussed in detail my belief that Mr. Sligh was treating me differently than he was treating the male engineers.

34. I complained that the male Engineers had offices and I did not. The available office was given to a male.

35. I was given a truck, like the males, but it was taken away from me.

36. I was forced to wear men's clothing and was disciplined for not wearing clothes that were designed and fitted for men.

37. I complained that Mr. Sligh ran his fingers through my hair and told me that I was getting gray.

3

38. The color of my hair became a running joke with my supervisors.

39. Mr. Sligh sent me a picture of him in bed, **with his shirt off.**

40. I suffered incredible stress and went to the emergency room twice to be treated for anxiety.

41. From June through July of 2018, I took medical leave.

42. In August and September of 2018, the discrimination was so pervasive and unrelenting that I was forced to leave my employment.

43. Mr. Sligh's discrimination continued and finally on August 29, 2018, I went to Ms. Cureton in tears to complain about Mr. Sligh's treatment of me.

44. In addition to the discrimination, I complained that my FMLA rights were being violated.

45. I told Ms. Cureton that I was being subjected to a hostile environment based on my sex and that I was afraid.

46. Ms. Cureton responded that I could file a formal grievance or take a demotion and apply for a position in a different department.

47. This response re-emphasized to me that complaining was futile.

48. I discussed the discrimination against me with Mr. Wallace on August 31, 2018.

49. I told him that there was a "double standard" and that I was facing "constant" discrimination.

50. I told Mr. Wallace that I felt like she was being treated "less than" and that I was working in a sexually hostile environment.

51. Mr. Wallace told me that the "old timers" did not know how to work with women and that I was not a part of the Riviera "bloodline".

52. Mr. Wallace then stated that he had no issues with my capabilities and hoped I would stay around.

53. I clearly discussed the discrimination with my supervisor, my supervisor's supervisor and the Human Resources Department.

54. I outlined all of this discrimination in a letter dated September 4, 2018. (Exhibit 1)

4

55. Again, Riviera said they would conduct a thorough investigation.

56. Riviera put in writing that they would investigate my claims. (Exhibit 2)

57. Riviera said they would get in touch with me.  (See, Exhibit 2)

58. I heard nothing from Riviera and filed a claim for unemployment benefits.

59. On October 24, 2018, the Alabama Department of Labor held a hearing regarding my claim for unemployment benefits.

60. The State of Alabama, Department of Labor awarded me benefits and concluded:

> The preponderance of presented evidence shows an intolerable situation existed from which the claimant could not have continued employment.  The employer failed to provide an equitable working environment or properly address existing issues repeatedly reported by claimant.  As she attempted to resolve the issues of concern with the employer on multiple occasions to no avail, voluntary separation for a good cause reason caused by or connected to the conditions of employment has been established.  Therefore, it is determined the claimant is not subject to disqualification from the receipt of unemployment compensation benefits under this section of Law.  (Exhibit 3)

61. The State of Alabama has concluded that I suffered from an intolerable situation and that even though I tried to resolve the situation on "multiple occasions" my attempts were of "no avail".

62. Three months after I left the employment of Riviera I was sent a letter informing me that Riviera had concluded its internal investigation and they asked me for my perceptions of "our" letter.  (Exhibit 4)

63. If they are referring to some letter they sent me, I never received such a letter, and if they are referring to the separation letter I sent them back in September of 2018, I outlined my perceptions of discrimination quite clearly in my letter and in my numerous conversations with my supervisor, my supervisor's supervisor and the Ms. Cureton…, all to no avail.

64. I sent them a response (Exhibit 5) and am waiting for a reply from Riviera but their first response took three months to send to me and I cannot wait another three months to file my Charge of Discrimination because there are statutes of limitations which require me to file a Charge in a timely manner.

65. I am willing to conciliate this case.

66. I seek reinstatement compensatory damages, punitive damages, equitable relief, attorneys' fees, and all costs and expenses expended on my behalf in pursuit of these claims. I request all other relief that may be available to me a matter of law and equity.

67. I was discriminated against based on my sex and in violation of Title VII of the Civil Rights Act of 1964, as amended, and retaliated against and I was discriminated against under the Family Medical Leave Act and retaliated against.

68. My attorney in this matter is Daniel A. Hannan with the law firm of Daniel A. Hannan, LLC. Mr. Hannan's address is P.O. Box 1286, Mobile, Alabama, 36633, and his physical address is 205 North Conception Street, Mobile, Alabama 36603, his telephone number is 251-289-1326 and his cellular telephone number is 251-654-1360.

I declare under penalty of perjury the statements contained herein are true.


_____   12-12-18
ALI ENSTROM               DATE


**I respectfully request an interview with the EEOC.**

**EXHIBIT 1**

September 4, 2018

To Whom It May Concern,

Effective immediately I am tendering my resignation from the position of Engineer III at Riviera Utilities. As I am not currently assigned any engineering projects, I do not expect that this will cause hardship to the company. It is my belief that I am being forced out of the company by my immediate supervisor, Scott Sligh, based on the fact that I am being ordered to again transfer to the Foley office and assigned tech work; therefore, causing a major change in my work conditions. While I have worked for him he has perpetuated a hostile work environment, discriminated against me based on my gender and continuously harassed me during work. Due to this hostile work environment, ongoing discrimination, sexual harassment and the violation of my FLMA medical privacy by HR Director Sharon Cureton, I feel I simply cannot continue to remain employed here.

When I began my employment four and half years ago, as the only female engineer at Riviera Utilities, I greatly enjoyed my job and had the utmost respect for my supervisor. I learned a lot from James Wallace, he was a great mentor who treated me respectfully and as an equal. I was never made me feel inferior and received positive evaluations that were both encouraging and highlighted the quality of my work. I felt that I had potential for further growth and a future with Riviera Utilities. This perception was quickly challenged once I began to work under the supervision of Mr. Sligh. When I received my second review with Scott, I was in shock at the drastic change in my evaluation. Suddenly I was viewed as an inferior employee, contrary to previous evaluations. This was the beginning of a systematic attempt to undermine my position as a valued employee. I believe this treatment was due to my gender. I was questioned in the presence of HR staff for working in the office out of uniform and felt humiliated when forced to explain that the uniforms were in men's sizing, which did not fit me in manner that allowed for decency and were significantly uncomfortable to wear if not necessary. Mr. Sligh summarily moved me to the Daphne facility from the Foley location when an office became available in Foley and gave the office to a lower level male colleague (all other Engineer III's have offices). While working at the Daphne office, I was a victim of sexual harassment and coerced into giving a statement by the HR director. Immediately following the conclusion of the investigation, I was put on probation for not holding a specific certification, which I had not held the entire previous four years while employed at Riviera. The timing and drastic terms of my probation felt like retaliation. The next day after being put on probation, I received an inappropriate picture from Mr. Sligh of himself shirtless in bed via text message. Following these incidences, began numerous health issues and hospitalizations. This was then followed by my Riviera issued truck being taken away and reissued to another colleague. I was then reprimanded for not performing field checks, an impossibility without a vehicle available when needed.

I have always performed to the best of my ability, which has been remarked upon by other supervisors as well as previous supervisors. I have attempted to resolves these issues to no avail,

1

through conversations with Scott Sligh directly, and through conversations with Sharon Cureton and James Wallace individually. I informed Sharon and James of the aforementioned issues with Scott, and other discriminatory remarks made to me. I was informed by James that he takes the word of his supervisors. This is disheartening as Scott Sligh has perpetuated false statements about me to James and in documents pertaining to performance evaluation and my probation. Sharon has stated that the only action I could take is to file a grievance or take a demotion and apply for an available position in a different department. Unfortunately, my experience with Riviera Utilities' Human Resources department and my chain of command gives me no faith in a just resolution of my complaints. The violation of my medical privacy, the manner in which the sexual harassment investigation was handled, as well as the retaliatory probation I was placed on, leave me no expectation of a reasonable and fair treatment. For these reason, under great protest, I must resign effective immediately, as I feel I can no longer remain with Riviera Utilities.

Sincerely,
Ali A. Enstrom

**EXHIBIT 2**



# RIVIERA UTILITIES

413 E. Laurel Ave. - P.O. Drawer 2050 - Foley, 36536.
Phone (251)943-5001    Fax (251) 943-5275

September 5, 2018

Ali Enstrom
9820 Sommerset Dr.
Daphne, AL  36526

Dear Ali,

Your emailed resignation letter of September 4, 2018, has been received.

We are sorry you feel this way and have decided to leave employment with us.  A thorough investigation will be conducted into the events and concerns you have described in your email according to our normal procedures.   As part of the investigation, we will be in touch with you to obtain more details and your side of the story.   We hope that you will cooperate with us as we work through the investigation process.

I want to wish you the very best in your future endeavors.   You will receive information on benefit and payroll details in another correspondence.

Sincerely,

*Sharon S. Cureton*

Sharon S. Cureton, PhD
Human Resources Director

**EXHIBIT 3**



RIVIERA UTILITIES

413 E. Laurel Ave. · P.O. Drawer 2050 · Foley, 36536
Phone (251)943-5001 · Fax (251)943-5273

December 3, 2018

Ali Enstrom
9820 Sommerset Dr.
Daphne, AL  36526

Dear Ali,

We have completed our internal investigation into the events and concerns you described in your September resignation email according to our normal procedures. As part of the investigation, we would ask that you contact my office to arrange an interview so we may obtain details on your perspective as outlined in our email.

You may contact me at 970-4147 at your earliest convenience.

Sincerely,

*Sharon S. Cureton*

Sharon S. Cureton, PhD
Human Resources Director

**EXHIBIT 4**

Ali Enstrom
9820 Sommerset Drive
Daphne, AL 36526

December 11, 2018

Mrs. Sharon S. Cureton, PhD
413 E. Laurel Avenue
Foley, AL 36536

Dear Mrs. Cureton:

I am in receipt of your letter dated December 3, 2018.  In the letter, you mention that Riviera has completed its internal investigation.  Will you please send me a list of the persons you interviewed and all statements Riviera obtained and the findings from the investigation?

You also mentioned that you would like to interview me about my perspective "as outlined in "our" email".  Is "our" email referring to something that Riviera sent to me?  If so, I never received such an email and if you will forward it to me at the above address, I will respond.

If "our" email is supposed to be referring to my resignation email you received in September, I made my perspective of events and concerns quite clear in that email and in speaking with you and James about the events and concerns that led to my termination.  If you have any further specific questions, please put them in writing and I will respond.

Respectfully yours,

Ali Enstrom

Attachment

**EXHIBIT 5**

STATE OF ALABAMA
DEPARTMENT OF LABOR
HEARINGS AND APPEALS DIVISION
MONTGOMERY, ALABAMA   36130



## DECISION ON UNEMPLOYMENT COMPENSATION CLAIM

**CLAIMANT**

ALI A ENSTROM
9820 SOMMERSET DR
DAPHNE AL 36526

**EMPLOYER**

RIVIERA UTILITIES OF FOLEY
ATTN  HUMAN RESOURCES
PO BOX 2050
FOLEY AL 36536

APPELLANT : CLAIMANT
LOCATION  : TELEPHONE
OC NO.     : 00-45

DATE MAILED   : 10/30/18
CASE NO.       : 07890-AT-18
S. S. NO.       : XXX-XX-7959
HEARING DATE : 10/24/18

**APPEARANCES AT THE HEARING:** Claimant with legal counsel

**ISSUE(S):** Voluntarily leaving most recent bona fide work without good cause connected with such work.  Section 25-4-78(2) Code of Alabama 1975

**FINDINGS:** The claimant appealed an Examiner's determination imposing a disqualification and denying benefits under Section 25-4-78(2) of the Unemployment Compensation Law.  The determination was based upon a finding that the claimant left most recent bona fide work with this employer voluntarily and without good cause connected with work.

The claimant was employed with the above listed employer from April 14, 2014, until September 4, 2018, the only female engineer. On the final date, she submitted a written resignation letter to upper management. The final incident that led to the decision was a mandate issued to the claimant that she transfer to a work site location 30 miles away from the usual site. The change in work site would require the claimant to work directly with and have as a direct supervisor, a member of the management team she had reported to human resources multiple times for sexual harassment and improper behavior directed toward her. Human resources personnel advised the claimant, days prior to September 4, 2018, that she would be demoted with a reduction in pay if she did not comply with the request. The claimant is unaware of any disciplinary action or discussion with the reported person by human resources or upper management, but was advised the men employed did not know or understand how to work with a woman. She sought medical assistance and review for stress related issues that resulted from the ongoing working environment. The claimant determined the conditions such that she could not continue and left the position.

**CONCLUSIONS:** Section 25-4-78(2) of the Unemployment Compensation Law provides for disqualification if an individual has left her most recent bona fide employer voluntarily without good cause connected with such work. "Good cause" is defined as substantial reason adequate excuse or just ground for such action that will bear the test of reason when compared to what a normal or average

worker would do under similar circumstances. The preponderance of presented evidence shows an intolerable situation existed from which the claimant could not have continued employment. The employer failed to provide an equitable working environment or properly address existing issues repeatedly reported by the claimant. As she attempted to resolve the issues of concern with the employer on multiple occasions to no avail, voluntary separation for a good cause reason caused by or connected to the conditions of employment has been established. Therefore, it is determined the claimant is not subject to disqualification from the receipt of unemployment compensation benefits under this section of Law.

**DECISION:** The Examiner's determination is reversed.  The disqualification imposed under Section 25-4-78(2) of the Unemployment Compensation Law is removed and the reduction in the maximum amount of benefits payable is restored.  The employer's experience rating account is chargeable for this period of employment.

**APPEAL RIGHTS:** This decision becomes final unless an application for leave to appeal to the Board of Appeals is received in writing at the Department address above or by fax at (334)956-7494 on or before the **FINAL DATE OF November 14, 2018**. If an appeal is filed, and the claimant remains unemployed, the claimant should continue to file weekly claims on time pending the outcome of the appeal. Payments can only be made for eligible weeks for which timely claims have been filed.

Fanchon A. Hardin
Administrative Hearing Officer

FAH/agb

Cc: DANIEL HANNON AAL
    MOBILE AL 36633

**EXHIBIT 2**

**NOTICE OF RIGHT TO SUE**



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL

7018 1830 0000 1246 7707

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

October 21, 2019

Ms. Ali Enstrom
c/o Daniel Hannan, Esquire
Attorney at Law
205 North Conception Street
Mobile, AL  36603

Re: EEOC Charge Against Riviera Utilities
   No. 425201900267

Dear Ms. Enstrom:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Mobile Local Office, Mobile, AL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Mobile Local Office, EEOC
   Riviera Utilities

# EXHIBIT 3

# STATE OF ALABAMA DEPARTMENT OF LABOR

# DECISION OF BOARD OF APPEALS



**STATE OF ALABAMA
BOARD OF APPEALS
DEPARTMENT OF LABOR
MONTGOMERY, AL 36131**

Place of Hearing: MOBILE                    Date of Hearing: 3/7/2019
A. T. Case No. 07890AT18

---

## DECISION OF BOARD OF APPEALS

| In re claim of | Worker's Social Security Number |
|---|---|
| ALI ENSTROM | 7959 |
| Former employee of | |
| RIVIERA UTILITIES OF FOLEY | |
| FOLEY,AL | |

**APPEARANCES:** CLAIMANT & EMPLOYER REPRESENTATIVE

**ISSUE(S):** Whether the claimant was discharged or removed from work for a dishonest or criminal act committed in connection with work or for sabotage or an act endangering the safety of others or for the use of illegal drugs after previous warning or for the refusal to submit to or cooperate with a blood or urine test after previous warning. Section 25-4-78(3)(a) Code of Alabama 1975.

**FINDINGS:** The Board of Appeals has carefully considered all the evidence in this case and after such consideration is of the opinion that the findings, conclusions and decisions of the Administrative Hearing Officer are correct.

**DECISION:** The decision of the Administrative Hearing Officer is affirmed.

Done this **20TH** Day of **AUGUST,2019.**
And service made on parties of interest
this date VIA U. S. Mail.

_____
CHAIRMAN

Certified a true and correct copy:

_____
*Frank D. Marsh*

_____
ASSOCIATE MEMBER

_____
Gage Pregno
Board of Appeals Officer

_____
ASSOCIATE MEMBER